## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

DENNIS DONNELLY, on behalf of
himself and all others similarly situated,

        Plaintiff-Petitioner,

    v.

DES MOINES REGISTER AND
TRIBUNE CO., INC.; J. ANN SELZER;
SELZER & COMPANY; and GANNETT
CO., INC.,

        Defendants.

8th Cir. Case No.: **25-8012**

Trial Court Case No. 4:25-cv-00150-
RGE-WPK

U.S. District Court for the Southern
District of Iowa

## PETITION FOR REVIEW OF THE DENIAL OF A MOTION
## FOR REMAND UNDER THE CLASS ACTION FAIRNESS ACT,
## 28 U.S.C. § 1453(C)(1)

Daniel R. Suhr
    *(Admitted Feb. 16, 2020)*
Center for American Rights
1341 W. Fullerton Ave., Suite 170
Chicago, Illinois 60654
(414) 588-1658
dsuhr@americanrights.org

Robert R. Anderson
P.O. Box 4
Atlantic, Iowa 50022
(515) 382-1278
bobandersoniowan@gmail.com

**FILED**
**NOVEMBER 3, 2025**
**U.S. Court of Appeals**
**Eighth Circuit – St. Paul, MN**

RECEIVED

NOV - 3 2025

U.S. COURT OF APPEALS
EIGHTH CIRCUIT

Pursuant to 28 U.S. Code § 1453(c)(1) and Federal Rule of Appellate Procedure 5[1], Plaintiff-Petitioner Dennis Donnelly petitions this Court to review and reverse the order of the U.S. District Court for the Southern District of Iowa denying his motion for remand to Iowa state court under exceptions to the Class Action Fairness Act of 2005.

## A. Necessary Facts and Procedural History.

The Sunday immediately preceding the November 2024 presidential election, *The Des Moines Register* blared in a front-page above-the-fold headline that then-Vice President Kamala Harris was leading then-former President Donald Trump in Iowa. The *Register* reported that its signature Iowa poll, run by Dr. Ann Selzer and her eponymous Selzer & Co., found Harris up by three contrary to all conventional wisdom, journalistic reporting, other polling, and political history. Lo and behold, the news that seemed too good to be true was, in fact, not true—Trump crushed Harris by 13 points just two days later, meaning the *Register's* poll was off by an astonishing 16 points. According to the poll's own social-science certificate regarding its margin of error, there was a 1 in 3.5 million chance of an honest miss of that magnitude.

---

[1] *See also* Eighth Circuit Internal Operating Procedure I.D.3 ("The administrative panels consider and decide: (1) petitions for permission to appeal filed pursuant to FRAP 5.").

Dennis Donnelly is a subscriber to *The Register*. As a subscriber, the *Register* promised him "trustworthy, smart and engaging news and information" from "the state's premier source of information." First Amended Complaint (FAC), ECF-X, at 1. Regarding the Iowa Poll specifically, the *Register* told its readers that "[t]he Iowa Poll is carefully constructed to ensure that it is accurate." FAC 56. That explanation continued, "The Des Moines Register and its polling partner, West Des Moines-based Selzer & Co., take great care in shaping each Iowa Poll. We pay careful attention to the design of the questions, when a poll will be in the field and even how we reach Iowans." FAC 57. The *Register* also promised to follow Gannett's principles of ethical news coverage: "Don't publish a story if it doesn't feel right. Check it further." "Watch carefully for red flags that give reason to be skeptical of news- gathering or editing conduct." And "[b]e especially careful with technical terms, statistics, mathematical computations, crowd estimates and poll results." FAC 3. More specifically, the poll promised an accurate representation of the electorate within the margin of error—a certification that had a 1 in 3.5 million chance of being true in this case, according to a former Iowa State political science professor. FAC 60.

The *Register* broke its promises to Mr. Donnelly and its other subscribers. It gave him a product that was fundamentally inaccurate and

untrustworthy. So Mr. Donnelly filed a consumer protection action on behalf of himself and all other subscribers for that broken promise, just like any other consumer would do when they receive a product that doesn't live up to the promises made to sell it. He sued The Des Moines Register and Tribune Co., which owns and publishes the paper; Gannett Co., which is the corporate parent of the Register & Tribune Co.; and Dr. Ann Selzer and Selzer & Co., the *Register* contractor who was hired to conduct and explain the poll.

The Defendants believe that the First Amendment protects them from liability, even as Mr. Donnelly has alleged that they engaged in intentional or reckless misconduct, but that is a fight for a different day. Rather, this petition presents interesting and novel issues concerning the proper interpretation of the Class Action Fairness Act (CAFA).

Mr. Donnelly originally filed his case as a putative class action in Iowa state court presenting exclusively Iowa state law claims. ECF 1-1. Gannett Co., which is not an Iowa company, timely filed for removal to federal court under CAFA. ECF 1.[2] Mr. Donnelly timely filed a motion for

---

[2] Below, Mr. Donnelly contended that Gannett did not file a timely removal because Gannett acted more than 100 days after being provided with a courtesy copy of the complaint, though it did act within 30 days of filing a formal stipulation of service. Mr. Donnelly believes that Gannett engaged in litigation gamesmanship, but the District Court rejected that contention. Mr. Donnelly recognizes that this is a situation-sensitive question rather than a legal question, and therefore chooses not to petition for an appeal on this point.

remand to Iowa state court, invoking three statutory exceptions to federal jurisdiction: the local-controversy exception, the home-state exception, and the interest-of-justice exception, and requesting discovery if necessary to establish the elements of these exceptions. ECF 21. The District Court ruled on the briefs with an order denying the motion on Wednesday, October 22, 2025, ECF 47, and Mr. Donnelly timely files this Petition.[3]

Mr. Donnelly's case is separate from a similar case filed by President Donald Trump and others individuals (not on behalf of a class) against the same defendants. The cases were treated as related at the District Court and both assigned to Judge Ebinger, but the President recently voluntarily dismissed his federal action without prejudice while filing a new state action. This Court granted mandamus to effectuate that decision. *In re Trump*, 2025 U.S. App. LEXIS 28284, *1 (8th Cir. Oct. 24, 2025). As a result, the Trump case bringing the same state law claims based on the same conduct will now proceed in state court; whether this case will proceed in state court as well will depend on this Court's order on this remand request.

---

[3] "[A]pplication" must be "made to the court of appeals not more than 10 days after entry of the order" denying the motion for remand. 28 U.S.C. § 1453(c)(1).

**B. Questions Presented.**

1. Under 28 U.S.C. § 1332(d)(4)(B) and 28 U.S.C. § 1332(d)(3), is a defendant a "primary defendant" where it is present in the case for its role as a parent corporation setting standards and providing supervision but not for the direct action causing the injury?

2. Under 28 U.S.C. § 1332(d)(4)(A)(i)(III), is the "principal injuries" prong satisfied when the injuries are uniquely related to and concentrated amongst the people and places of the forum state?

**C. Relief Sought**

Petitioner asks that this Court grant the petition, hear the appeal, and reverse the District Court's order.

**D. Why the Appeal is Authorized and Should be Allowed.**

**1. This appeal is authorized by CAFA.**

The appeal is authorized by CAFA, 28 U.S.C. § 1453(c)(1): "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed." This Court has directed litigants to pursue such an appeal

through the mechanisms of F.R.A.P. 5. *Froud v. Anadarko E&P Co. Ltd. P'ship*, 607 F.3d 520, 522 (8th Cir. 2010).

The Court has discretion whether to accept an appeal and reviews any decision in a granted appeal *de novo. Brunts v. Walmart, Inc.*, 68 F.4th 1091, 1093 (8th Cir. 2023). In exercising its discretion on whether to grant the petition, the Court considers not necessarily whether the district court erred at first glance but whether the "prospective appeal" presents an "important issue" "under CAFA" which this Court can clarify. *Froud*, 607 F.3d at 522. *See Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 38-39 (1st Cir. 2009) (similar). This is particularly true where there are "courts on both sides of the question" such that "appellate review would be useful" to settle the question for this circuit. *Coleman v. Estes Express Lines, Inc.*, 627 F.3d 1096, 1101 (9th Cir. 2010).

**2. This Appeal should be allowed because it presents two issues of first impression for the Eighth Circuit to decide on which other federal courts are split.**

"Congress passed CAFA to 'restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction.'"

*Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1032 (8th Cir. 2014) (quoting CAFA, Pub. L. No. 109-2, § 2(b)(2), 119 Stat. 4, 5 (2005)).

In order to ensure that CAFA was only used on "interstate cases of national importance," Congress wrote into the Act two mandatory exceptions to jurisdiction and one discretionary exception: the local-controversy exception, the home-state exception, and the interest-of-justice exception. If a plaintiff in a removed case could prove one of the first two applied, or could convince a judge to apply the third, then the case would be remanded to the state court where it more properly belonged for resolution. To determine whether an exception applies, the Act lays out various factors that a plaintiff must establish.

*i. This Petition should be allowed as to Question Presented 1 because there is a split in authority on how to interpret the "primary defendant" requirement in the Home-State Exception and Interest-of-Justice Exception, and no Eighth Circuit opinion resolves the question. Read correctly, the "primary defendant" is the chief or main defendant, not a secondary actor like a coconspirator, corporate affiliate, or insurer.*

The term "primary defendant" is used twice in CAFA—once in the "home state exception," where it is one of two prongs necessary to establish

a mandatory remand,[4] and once in the "interests of justice exception," [5] where it is a required box to check before turning to the discretionary factors.[6]

"The term 'primary defendant' is not expressly defined in CAFA." *Moua v. Jani-King of Minnesota, Inc.*, 613 F. Supp. 2d 1103, 1108 (D.Minn. 2009). "The courts that have been asked to ascertain the meaning of 'primary defendants' have relied on several potential (and sometimes incongruent) understandings of the term." *Id.* This Circuit currently lacks a leading case defining "primary defendant," such that granting the petition makes sense to guide the law in this circuit.[7]

Though the formulations differ, there are basically three approaches to defining "primary defendants."

---

[4] "A district court shall decline to exercise jurisdiction under paragraph (2) . . . [where] two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

[5] "A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of. . .[six factors]."

[6] *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1162 n.11 (11th Cir. 2021) ("both the percentage of Florida citizens and the primary defendant requirements must be found before the court can consider the six discretionary factors").

[7] The only other place the term "primary defendants" is used in the U.S. Code is the Multiparty, Multiforum, Trial Jurisdiction Act of 2002 (28 U.S.C. § 1369), where it was also undefined and no decision of this circuit has illuminated its meaning in that context either.

One approach asks: "who pays?" Who is "the deep pocket?" On that approach, a defendant who did not play a significant role in the alleged injurious conduct is still a "primary defendant" because it faces significant liability at the end of the case. *See Madison v. ADT, L.L.C.*, 11 F.4th 325, 328 (5th Cir. 2021); *Hunter v. City of Montgomery*, 859 F.3d 1329, 1336 (11th Cir. 2017) ("whether, given the claims asserted against the defendant, [the defendant] has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable.").

Other courts focus on the "who done it" question—"the United States Supreme Court has historically defined 'primary defendants' as those parties having a 'dominant relation to the subject matter of the controversy.'" *Passa v. Derderian*, 308 F. Supp. 2d 43, 62 (D.R.I. 2004) (quoting *United States v. American Tobacco Co.*, 221 U.S. 106, 143 (1911)). *Passa*'s survey of caselaw revealed "a settled judicial understanding of 'primary defendants' as 'those parties having a 'dominant relation to the subject matter of the controversy,' in contrast to defendants who played a secondary role by merely assisting alleged wrongdoing." *Kitson v. Bank of Edwardsville*, 2006 U.S. Dist. LEXIS 85285, *54 (S.D. Ill. Nov. 22, 2006). This case law from other contexts such as RICO, securities, and indemnification differentiates

9

between primary and secondary defendants such as "participants" versus "aiders and abettors." *Id.* (collecting cases).

A third approach is to blend these considerations into a multifactor balancing test that looks at all of the above and the kitchen sink. *See, e.g., Vodenichar v. Halcón Energy Props.*, 733 F.3d 497, 505-06 (3d Cir. 2013); *Sudholt v. Country Mut. Ins. Co.*, 83 F.4th 621, 628 (7th Cir. 2023); *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1068 (9th Cir. 2019).[8]

The District Court below adopted something like the third approach, finding that "Donnelly seeks to hold Gannett liable for its own actions in relation to the release of the poll and does not meaningfully distinguish between theories of liability between the parties." ECF 47 at 8.

The best way to read the statute is the second method: "primary defendants" are those most at the center of the action, as opposed to secondary defendants who can play a significant but not chief role in the action.

There are several reasons that this Circuit should adopt this approach. First, it most naturally comports with the ordinary meaning of the word "primary." This Court has said "the first rule of statutory interpretation [is] that the court interpret a word not defined in a statute according to its plain

---

[8] *See Kress Stores of P.R., Inc. v. Wal-Mart P.R., Inc.*, 121 F.4th 228, 237 (1st Cir. 2024) (adopting *Singh*).

meaning unless context requires otherwise." *Banks v. Cotter Corp.*, 22 F.4th 788, 795 (8th Cir. 2022). *See Kuklenski v. Medtronic USA, Inc.*, 134 F.4th 528, 531 (8th Cir. 2025). The plain meaning of "[t]he phrase 'primary defendants' indicates a chief defendant or chief class of defendants." *Watson v. City of Allen*, 821 F.3d 634, 641 (5th Cir. 2016).

Second, perhaps more convincingly, such a reading comports with the surrounding statutory context. *See Kuklenski*, 134 F.4th at 532. Nearby in the same statute, in the "home state" exception, CAFA directs that remand is mandatory where "there is at least one defendant from whom 'significant relief' is sought, whose conduct forms a 'significant basis' for the asserted claims, and who is a citizen of the state in which the action was filed." 28 U.S.C. § 1332(d)(4)(A)(2). The question, then, is how to read "primary defendants" in light of the use of the term "significant defendants" just above. . .

"Clearly, CAFA intended there to be a substantive difference between 'primary defendants' and 'significant defendants' as contemplated by the two exceptions to the exercise of jurisdiction under the statute. The dictionary definition of 'primary' includes 'first in importance; chief; principal; main.' Webster's New World College Dictionary 1140 (4th ed. 1999). By contrast, the dictionary definition of 'significant' includes 'important.' *Id.* at 1334. These definitions appear particularly apt in the

context of CAFA, meaning that a significant defendant is of less importance than a primary defendant." *Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 369 (E.D.La. 2007); *Anderson v. Hackett*, 646 F. Supp. 2d 1041, 1048 (S.D.Ill. 2009) ("one need not be a 'primary' defendant in order to be a 'significant' defendant.").[9] The Fifth Circuit recognized this reasoning in *Watson*: "According ['primary defendants'] a broader meaning is inconsistent . . . with CAFA's distinct treatment of 'primary' defendants, *see* 28 U.S.C. § 1332(d)(4)(B), (d)(5), and 'significant' defendants, *see id.* at § 1332(d)(4)(A)(i)(II)." 821 F.3d at 641.

If a "significant" defendant is one "from whom 'significant relief' is sought [and] whose conduct forms a 'significant basis' for the asserted claims," then a "primary defendant" must be even more than that—a chief or main defendant. Gannett arguably fails even as a significant defendant, given the limited role its conduct played in the asserted claims (again, Gannett is sued as a parent company, not for the direct conduct)—it can hardly be considered a primary defendant.

Third, asking whether a party is a chief defendant is a rule that district courts can more easily apply at the early stage of litigation where these

_____

[9] It is this nearby statutory language that differentiates between the meaning of primary as "principally" versus as "substantial." *See Mayo Clinic v. United States*, 145 F.4th 877, 886 (8th Cir. 2025). *See also Malat v. Riddell*, 383 U.S. 569, 572 (1966).

motions are made. Who has the deep pockets is a fact question that often won't be known at the start of the case. Similarly, how a jury might assess comparative liability amongst multiple defendants such that several are hit particularly hard and others are let off lightly cannot be known at this early stage. *Kearns v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 41614, *25-26 (C.D.Cal. Nov. 18, 2005) ("The *Passa* [308 F. Supp. 2d 43] court rejected suggestions of the parties that 'primary defendants', be defined either as those with the deepest pockets or those with the greatest culpability. Those definitions were seen as being inappropriate and unworkable because they were too fact-based to be evaluated at the procedural point at which they were to be applied."). *Accord Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 516 (E.D.Pa. 2005). While courts cannot know at this early stage the financial resources of defendants or make more than guesses at jury determinations of comparative fault, they can easily look at the face of the complaint to determine whether a defendant is a primary or secondary actor in the alleged misconduct.

Fourth and finally, this approach comports with how numerous district courts have considered the particular situation presented in this case: finding that a parent company is not a primary defendant when its subsidiary or related company was the one that undertook the alleged misconduct. *See, e.g., Mackey v. Chemtool Inc.*, 2022 U.S. Dist. LEXIS 143498, *5-6

(N.D.Ill. Aug. 11, 2022); *McClendon v. Challenge Financial Investors Corp.*, 2009 U.S. Dist. LEXIS 17908, *13 (N.D. Ohio Mar. 9, 2009); *Dunham v. Coffeyville Res., LLC*, 2007 U.S. Dist. LEXIS 82606, *9-10 (D.Kan. Nov. 6, 2007); *Brown v. SBC Communs. Inc.*, 2006 U.S. Dist. LEXIS 71208, *8 (S.D.Ill. Sept. 29, 2006); *Serrano v. 180 Connect, Inc.*, 2006 U.S. Dist. LEXIS 61035, *4 (N.D.Cal. Aug. 11, 2006), *rev'd on other grounds*, 478 F.3d 1018 (9th Cir. 2007). *See also Green v. Sheraton, LLC*, 2022 U.S. Dist. LEXIS 103642, *6 (Magistrate's Report) (W.D.N.Y. May 31, 2022) (employing franchisee is the primary defendant; affiliated franchisor is a secondary defendant), *adopted*, 2022 U.S. Dist. LEXIS 159170 (W.D.N.Y. Sept. 1, 2022); *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 351 (E.D.N.Y. 2008) (apartment complex operator is primary defendant; corporate affiliates are secondary defendants).

Here, Plaintiff has alleged Gannett's role was typical of parent corporations—establishing policies and setting standards for its subsidiaries, one of which is the *Register*. Gannett did not make the promises and Gannett did not break the promises. It is still an appropriate defendant (and Gannett did not move to dismiss based on any sort of piercing-the-corporate-veil-type theory), but it is not a *primary* defendant. It is certainly not "the chief defendant" compared to its subsidiary who did the deeds at issue.

*ii. This appeal should be allowed as to Question Presented 2 because there is a split in authority on how to interpret the "principal injury" prong in 28 U.S.C. § 1332(d)(4)(A)(i)(III), the "Local Controversy" exception to CAFA jurisdiction. No Eighth Circuit opinion resolves the question, and the District Court interpreted the statute contrary to the statute's plain meaning.*

The "local controversy" exception requires the court to grant remand and decline jurisdiction "**(i)** over a class action in which—

**(I)** greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

**(II)** at least 1 defendant is a defendant—

    **(aa)** from whom significant relief is sought by members of the plaintiff class;

    **(bb)** whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

    **(cc)** who is a citizen of the State in which the action was originally filed; and

**(III)** principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

**(ii)** during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations

against any of the defendants on behalf of the same or other persons[.]" 28 U.S.C. § 1332(d)(4)(A).

The District Court below determined that elements (i)(II) and (ii) were met in this case.[10] The Court declined to order discovery so the Plaintiff could determine whether element (i)(I) was met because the Court determined that the Plaintiff could not establish element (i)(III), the "principal injuries" prong. ECF 47 at 6-8. The Court followed the Fifth Circuit finding that Congress "intended to require that *all* plaintiffs sustain their principal injuries in the forum state and nowhere else." *Cheapside Mins., Ltd.. v. Devon Energy Prod. Co., L.P.,* 94 F.4th 492, 501 (5th Cir. 2024). Further following the Fifth, the Court reasoned that the injury here was financial in nature (purchasing a subscription), and "a plaintiff sustains an economic injury where he resides." *Id.* at 498. Gannett provided an affidavit that the *Register* has subscribers in states other than Iowa, so the Court reasoned this element could not be met.

Respectfully, the District Court erred. The Fifth Circuit's approach is one of two approaches courts employ to analyze the "principal injuries" prong. "There are two ways in which this standard may be satisfied. First, and most obviously, this requirement may be met when the conduct alleged

---

[10] Following this Circuit, the District Court described this as a "narrow" exception, but the Third Circuit has said Congress employed "broad language" in this exception. *Abraham v. St. Croix Renaissance Group, L.L.L.P.,* 719 F.3d 270, 278 (3d Cir. 2013).

is truly limited to a single state. *See Cheapside Minerals, Ltd. v. Devon Energy Prod. Co.*, 94 F.4th 492, 500-01 (5th Cir. 2024). . . . Second, the principal injuries requirement may be satisfied if the harm inflicted is unique to [one state], even if not exclusively incurred within the state." *McGuire v. Pacificorp*, 2025 U.S. Dist. LEXIS 136615, *32 (D.Or. May 7, 2025).

Though the District Court here adopted the first approach as the only method to meet the prong, many other courts follow *McGuire* in recognizing that it can be sufficient for the "principal injuries" to be "concentrated in" or to "uniquely affect" the forum state, even if a few class members were injured outside the forum state. *Iverson v. SND Nat'l Ministry Corp.*, 2024 U.S. Dist. LEXIS 172670, *24 (N.D. Cal. Sept. 23, 2024); *Talen Mont. Ret. Plan v. PPL Corp.*, 2019 U.S. Dist. LEXIS 159130, *22 (D. Mont. Sept. 13, 2019), *permission to appeal denied*, 2019 U.S. App. LEXIS 39220, *2 (9th Cir. Nov. 21, 2019); *Richins v. Hofstra Univ.*, 908 F. Supp. 2d 358, 363 (E.D.N.Y. 2012) (prong satisfied even where over 20% of putative class members had out-of-state addresses). *See Aarstad v. Burlington No. Santa Fe Ry.*, 2020 U.S. Dist. LEXIS 60326, *12 (D. Mont. April 6, 2020) ("the Court could have relied on the unique extent of injuries to Montanans…"); *King v. Albert & Carol Mueller L.P.*, 2015 U.S. Dist. LEXIS 37525, *7-8 (M.D.Pa. Mar. 25, 2015) ("this controversy uniquely affects Northeast Pennsylvania and that the principal injuries are concentrated within

Pennsylvania.").[11] *See also Vodenichar*, 733 F.3d at 508 (finding principal injuries prong satisfied where "most class members who sought to lease their oil and gas rights allegedly reside in, and all of the land is located in, Mercer County, Pennsylvania.")

For instance, the Court in *Talen Montana Retirement Plan* found that the "principal injuries" prong was satisfied where, "[a]lthough some other states each have a smattering of Talen Montana creditors, the sheer amount of damage caused to Montana citizens, particularly the hundreds of employees and retirees residing in Rosebud County, and to the Montana Department of Environmental Quality makes this a controversy that 'uniquely affects' Montana unlike anywhere else." 2019 U.S. Dist. LEXIS 159130, *22. "Here, the harm is the Defendants defrauding mostly Montanan creditors, many of whom are employees or retirees, of a then Montana-based company." *Id.* at *21.

Similarly, where "donors of [a non-profit organization] are likely spread across the country," the court nevertheless held the principal injuries prong was met when "the issues center around a closure of a local school in Ventura County, California and the harm it has on its students, applicants, benefactors/factors, and donors—who are, as the Removing Defendants

---

[11] Both "uniquely affects" and "concentrated in" are concepts drawn from the legislative history and subsequently incorporated into the analysis by courts. *See Vodenichar*, 733 F.3d at 508 n.11.

concede, at least two thirds California citizens." *Iverson*, 2024 U.S. Dist. LEXIS 172670, *24. *Accord Kitson*, 2006 U.S. Dist. LEXIS 85285, *28-29 (principal injuries that were economic in nature occurred in Illinois where wrongful act occurred in Illinois and 90% of class members have Illinois mailing addresses).

Courts consistently recognize that the focus of the "principal injuries" prong is to ensure that the event or conduct at issue took place in the forum state. Sometimes creative plaintiffs' lawyers try to avoid CAFA by attacking a nationwide policy or problem but only alleging a class of consumers in a single state under that state's consumer-protection statute. The "principal injuries" prong prevents this sort of playing fast-and-loose by asking whether the injuries from the conduct affected multiple states. *See Talen Mont. Ret. Plan*, 2019 U.S. Dist. LEXIS 159130, *19 (courts "consider whether the conduct alleged in the complaint could have plausibly caused harm to people or places nationwide. . . . courts reject[] the notion that the location of the class determined the outcome and instead focused on whether the alleged harm was plausibly national in scope.").

Decisions like *Talen* or *Iverson* better fit CAFA by recognizing a local controversy even where "a smattering" of class members live in other states. "The exception's purpose is to ensure that class actions with a local focus remain in state court rather than being removed to federal court because state

courts have a strong interest in resolving local disputes." *Kendrick v. Conduent State & Local Sols., Inc.*, 910 F.3d 1255, 1260 (9th Cir. 2018). The Defendants' intentional or reckless misconduct pushing the Iowa Poll about Iowa politics out to a subscriber base of overwhelmingly Iowa consumers is a classic local dispute that properly belongs in a local state court.

**E. Appendix: a copy of the order from the district court is attached as Exhibit 1.**

## CONCLUSION

This is a case truly tied to Iowa—the poll is of Iowans (it is called The Iowa Poll), the class of plaintiffs is overwhelmingly Iowans, the injuries uniquely affect and are concentrated among Iowans, the primary defendants are Iowans, and the alleged misconduct all took place in Iowa. That there are a smattering of Iowa Hawkeyes fans in all fifty states hungry for news of their alma mater's sports successes and that the case relates to President Trump does not transform this into an "interstate case[] of national importance" under CAFA. *Westerfeld,* 621 F.3d at 822. "To hold otherwise would cause a distinctly local issue to be transformed into a national issue, which is the opposite of CAFA's intent." *Talen Mont. Ret. Plan*, 2019 U.S. Dist. LEXIS 159130, *22.

The Petition should be granted, the District Court reversed, and the case returned to the district court for quick, straightforward jurisdictional discovery on the percentage of Iowans among the *Register's* subscriber base. Petitioner is confident that discovery will show more than 2/3rds of Register subscribers live in Iowa, after which the case must be remanded to state court for resolution of state law issues by Iowa state courts alongside the Trump litigation already present in Iowa state court.

Respectfully submitted,

/s/ Daniel R. Suhr
Daniel R. Suhr
Center for American Rights
1341 W. Fullerton Ave., Suite 170
Chicago, IL 60654
(414) 588-2658
dsuhr@americanrights.org

Robert R. Anderson
P.O. Box 4
Atlantic, Iowa 50022
(515) 382-1278
bobandersoniowan@gmail.com

November 1, 2025

## CERTIFICATE OF WORD COUNT

F.R.A.P. 5 limits petitions to 5200 words. This petition is 4724 excluding

tables and signature blocks. /s/ Daniel R. Suhr

## CERTIFICATE OF SERVICE

This petition was served on opposing counsel via email and FedEx.

Nicholas A. Klinefeldt
Faegre Drinker Biddle & Reath
801 Grand Ave., 33rd Floor
Des Moines IA 50309

Bob Corn-Revere
FIRE
700 Pennsylvania Ave., SE, Suite 340
Washington DC 20003

/s/ Daniel R. Suhr

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DENNIS DONNELLY, on behalf of himself and all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>DES MOINES REGISTER AND TRIBUNE COMPANY, J. ANN SELZER, SELZER & COMPANY, and GANNETT CO., INC.,<br><br>     Defendants. | No. 4:25-cv-00150-RGE-WPK<br><br><br>**ORDER DENYING MOTION TO REMAND** |

## I.      INTRODUCTION

Plaintiff filed this case in the Iowa District Court for Polk County, asserting claims against Defendants on behalf of himself and a putative class. Defendant Gannett Co., Inc. removed the case to this Court, asserting federal jurisdiction under the Class Action Fairness Act.

Plaintiff moves to remand the case to state court or, in the alternative, to seek jurisdictional discovery. Plaintiff argues this case falls within an exception to the Class Action Fairness Act. In response, Defendants assert no exception applies. Defendants also argue Plaintiff's request for jurisdictional discovery is unnecessary.

For the reasons set forth below, the Court denies Plaintiff's motion to remand and declines to permit jurisdictional discovery.

## II.      PROCEDURAL BACKGROUND

Donnelly initially filed suit in the Iowa District Court for Polk County on January 6, 2025, alleging five claims. Pet., ECF No. 1-1. Count I asserts fraudulent misrepresentation, or in the alternative reckless negligent misrepresentation (Alternative Count I); Count II asserts a consumer fraud claim; Count III asserts a professional malpractice claim; and Count IV asserts interference with the right to vote. *Id.* Gannett accepted service on April 4, 2025. Certificate of Service, ECF

No. 1-2. Gannett removed the case on April 24, 2025, on the basis of class action diversity jurisdiction under the Class Action Fairness Act. Def. Gannett's Notice of Removal ¶¶ 14–15, ECF No. 1. Shortly thereafter, Donnelly filed a motion to remand, which is now before the Court. Pl.'s Mot. Remand, ECF No. 21; Pl.'s Br. Supp. Mot. Remand, ECF No. 21-1. Gannett and Defendant Des Moines Register and Tribune Company resist, and Donnelly replies to Defendants' resistance. Def. Des Moines Register & Gannett's Resist. Pl.'s Mot. Remand, ECF No. 24; Pl's. Reply Supp. Mot. Remand, ECF No. 25.

## III.   LEGAL STANDARD

Removal is permitted in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Removable cases include those falling within the Court's diversity jurisdiction. *Id.* The Class Action Fairness Act (CAFA) grants federal courts jurisdiction over cases in which the amount in controversy exceeds $5,000,000, there is at least minimal diversity between the parties, and there is at least 100 members in the class. 28 U.S.C. § 1332(d); *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). Minimal diversity is satisfied where "any class member and any defendant are citizens of different states." *Westerfeld*, 621 F.3d at 822. The Class Action Fairness Act includes two mandatory exceptions to federal jurisdiction. *Id.*; § 1332(d)(4). These exceptions operate as an abstention doctrine, requiring courts to abstain from exercising jurisdiction but not stripping the court of subject matter jurisdiction. *Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 636 F.3d 971, 973 (8th Cir. 2011). The first mandatory exception, the local-controversy exception, states courts "shall decline to exercise jurisdiction":

> (i) over a class action in which—
> > (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> > (II) at least 1 defendant is a defendant—
> > > (aa) from whom significant relief is sought by members of the plaintiff class;

2

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . .

28 U.S.C. § 1332(d)(4)(A). The second mandatory exception, the home-state exception, requires abstention where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Courts also have discretion to decline to exercise jurisdiction pursuant to the interest-of-justice exception. 28 U.S.C. § 1332(d)(3). This exception permits courts to "look[] at the totality of the circumstances" and "decline to exercise jurisdiction . . . over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed . . . ." *Id.* Both the home-state exception and the interest-of-justice exception require all primary defendants be citizens of the State in which the action was originally filed.

"Although CAFA expanded federal jurisdiction over class actions, it did not alter the general rule that the party seeking to remove a case to federal court bears the burden of establishing federal jurisdiction." *Westerfeld,* 621 F.3d at 822. Once the removing party has established that the Class Action Fairness Act's jurisdictional requirements have been met, the burden is on the party seeking remand to establish that one of the Class Action Fairness Act exceptions applies. *Id.* at 822–23 (citing *Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1024 (9th Cir. 2007) ("[O]nce federal jurisdiction has been established under [§ 1332(d)(2)], the objecting party bears the burden of proof as to the applicability of any express statutory exception" under § 1332(d)(4)(A) and

3

(B))).

The Court relies on the facts alleged in Donnelly's state court petition rather than the amended complaint filed subsequent to removal. *See* Am. Compl., ECF No. 22. "It is axiomatic the court's jurisdiction is measured either at the time the action is commenced or, more pertinent to this case, at the time of removal." *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011) (citing *McLain v. Andersen Corp.*, 567 F.3d 956, 965 (8th Cir. 2009) (finding an argument in favor of remand based on an amended complaint was meritless because jurisdiction was to be determined at the time of removal)).

## IV.    DISCUSSION

Donnelly first alleges the motion to remand should be granted because Defendants did not timely remove the case. ECF No. 21-1 at 4–7. Donnelly also argues even if removal was timely, one of the Class Action Fairness Act exceptions applies. *Id.* Donnelly also seeks jurisdictional discovery. ECF No. 21-1 at 7. The Court first addresses the timeliness of removal, then addresses the applicability of the Class Action Fairness Act exceptions, and finally addresses the request for jurisdictional discovery.

### A.    Timeliness of Removal

Donnelly filed the state court action on January 6, 2025. ECF No. 21-1 at 4. Counsel for Defendants in this case also represent Defendants in another action with significantly overlapping subject matter.[1] Counsel for Donnelly provided Defense counsel with a courtesy copy of the complaint in this action and sought to discuss arranging convenient service of process. *Id.* Because of the overlapping subject matter between this case and the *Trump* case, counsel for Donnelly agreed to allow the full ninety-day timeline for service of process to run in this case so proceedings

---

[1] Defendants here are also defendants in *Trump v. Selzer*, No. 4:24-cv-00449-RGE-WPK (S.D. Iowa). The *Trump* case also centers around the Des Moines Register's publication of the Seltzer presidential election poll.

in the *Trump* case could develop further. *Id.* Once counsel for both parties recognized that the timeline for the *Trump* case would extend past the ninety-day window for service in this case, both parties met again to "finalize plans." *Id.* at 5. Service of process was accepted in this case on April 4, 2025. *Id.* Gannett's notice of removal was filed on April 24, 2025. *Id.* This is twenty days after service of process.

A "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant." 28 U.S.C. § 1446(b)(1). The clock for removal of a case to federal court starts on the date of service. *Murphy Bros., Inc v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 346 (1999) (rejecting "the so-called 'receipt rule'—starting the time to remove on receipt of a copy of the complaint, however informally, despite the absence of any formal service"); *Brown v. Tokio Marine & Fire Ins. Co.*, 284 F.3d 871, 873 (8th Cir. 2002) ("The law is settled in this Circuit that the thirty-day period to file a notice of removal runs from the time that a defendant is served with the complaint").

Donnelly requests this rule be set aside because of alleged "gamesmanship" by Defendants. ECF No. 21-1 at 5. It appears, however, that both parties agreed to additional time before service of process was accepted so the parties could monitor the progress of the *Trump* case. *Id.* at 4; ECF No. 24 at 7; Klinefeldt Decl. Supp. Defs. Des Moines Register & Gannett's Resist. Pl.'s Mot. Remand, Exs. 1–5, ECF Nos. 24-2, 3, 4, 5, 6. There is, therefore, no basis to depart from the bright line rule set forth in § 1446(b)(1). Notice of removal was filed twenty days after service of process. Notice of removal was therefore timely.

## B.    Class Action Fairness Act Exceptions

The Court next turns to the applicability of the three jurisdictional exceptions contained in the Class Action Fairness Act. Donnelly first asserts the local-controversy exception applies. ECF No. 21-1 at 7. Because Defendants have met their initial burden to show original jurisdiction, Donnelly has the burden to show an exception applies. *Cf. Westerfeld*, 621 F.3d at 822–23. To

demonstrate the applicability of the local-controversy exception, Donnelly has the burden of showing four things: 1) at least two-thirds of the putative class are citizens of the forum state; 2) at least one defendant whose actions form a significant basis for the claims must be a citizen of the forum state; 3) the principal injuries occurred in the forum state; and 4) there has been no similar class action filed within the last three years. *Cf.* 28 U.S.C. § 1332(d)(4)(A). Prongs two and four—the significant basis and similar class action prongs—are not in dispute. ECF No. 24 at 11. Donnelly seeks judicial discovery to establish the first—the citizenship prong. ECF No. 21-1 at 7. However, even if Donnelly shows at least two-thirds of the punitive class are from Iowa, Donnelly must still meet his burden as to the third—the principal injury prong. The question of principal injury is therefore the focus of the Court's discussion.

The local-controversy exception is a "narrow exception." *Atwood v. Peterson*, 936 U.S. 835, 839 (8th Cir. 2019). Donnelly does not address the principal injury prong in detail, but seemingly alleges an interpretation of "principal" in § 1332(d) as meaning where a majority or significant amount of the total injuries of the class took place. *See* ECF No. 21-1 at 8–9. This interpretation of the statute does not comport with the plain language of the statute, Congress's intent, or how other courts have interpreted the term.

For the local-controversy exception to apply, the principal injuries resulting from Defendants' alleged conduct must have been incurred in Iowa. This requires answering two questions: what is the alleged principal injury and where did class members suffer this injury. The Fifth Circuit recently considered the question of whether the local-controversy exception applies where the principal injury alleged is financial and most, but not all, class members reside in the forum state. *Cheapside Mins., Ltd. v. Devon Energy Prod. Co., L.P.*, 94 F.4th 492 (5th Cir. 2024) (finding the local-controversy exception did not apply where ninety percent of class members resided in the forum state but ten percent did not). The *Cheapside* court conducted a thorough and persuasive analysis and concluded "'principal injuries' qualitatively and comparatively

evaluates the types of injury, not the quantity of plaintiffs who were injured." *Id.* at 499–500. "Thus, when some plaintiffs sustain their primary injuries in the forum state but others do not § 1332(d)(4)(A)(i)(III) is not satisfied." *Id.* at 500. The Court finds the Fifth Circuit's interpretation of § 1332(d)(4)(A)(i)(III) articulated in *Cheapside* persuasive and applies it here.

An interpretation requiring all class members to incur the principal injury in the forum state comports with how Congress contemplated the exception would apply. The Class Action Fairness Act Senate Report provides an instructive example illustrating how the local-controversy exception should apply to the present case:

> For example, a class action in which local residents seek compensation for property damage resulting from a chemical leak at a manufacturing plant in that community would fit this criterion, provided that the property damage was limited to residents in the vicinity of the plant. However, if the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for this exception, even if it were brought only as a single-state class action.

S. Rep. No. 109-14, at 40 (2005).

Identifying the principal injury here is simple, as only one injury is alleged. The principal injury alleged here is "an ascertainable pecuniary loss: the value of a subscription to the *Des Moines Register.*" ECF No. 22 ¶ 157. The dispositive question is therefore whether all class members incurred this financial injury in Iowa. The general rule is a plaintiff incurs a financial injury in the place where they reside, not where the alleged conduct causing the injury occurred. *See e.g., Cheapside,* 94 F.4th at 499 ("Generally, a plaintiff sustains an economic injury where he resides."); *Cantor Fitzgerald Inc. v. Lutnick,* 313 F.3d 704, 710 (2d Cir. 2002) (noting where "injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss") (citation omitted); *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1079 (9th Cir. 2011) ("We have repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business.").

On the date the alleged injury occurred, November 3, 2025, the Des Moines Register had

subscribers in all fifty states. ECF No. 24-7 ¶ 4. Each of these subscribers experienced the same alleged financial injury—the decrease in value of their Des Moines Register subscription. This financial injury would be felt where these subscribers reside. Therefore, the principal injury alleged in the complaint occurred in all fifty states. Donnelly alleges Defendants engaged in conduct which financially injured consumers throughout the country. Therefore, the local-controversy exception does not apply.

Donnelly next asserts the home-state and interest-of-justice exceptions apply. ECF No. 21-1 at 8–9. Both these exceptions require all primary defendants be residents of Iowa. Donnelly claims Gannett is a secondary defendant "sued for its role as a parent company and for setting broad policies and standards." ECF No. 25 at 6. While the statute itself does not define what a primary defendant is, other courts examining this question have looked to whether defendants "are directly liable to the proposed class, as opposed to being vicariously or secondarily liable based upon theories of contribution or indemnification." *Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 504 (3d Cir. 2013) (encouraging courts to "determine if the plaintiffs seek to hold the defendant responsible for its own actions, as opposed to seeking to have it pay for the actions of others"). Courts also find all defendants to be primary defendants where the complaint fails to distinguish liability between defendants. *See Nicholson v. Prime Tanning Corp.*, No. 09-6083-CV, 2009 WL 2900042, at *2 (W.D. Mo. Sept. 3, 2009) ("Courts have routinely held that when a complaint fails to distinguish among defendants as to theories of liability, all are considered primary defendants.").

Donnelly seeks to hold Gannett liable for its own actions in relation to the release of the poll and does not meaningfully distinguish between theories of liability between the parties. The original petition contains several specific assertions against Gannett directly. Donnelly claims "Gannett has a history of telling its newspapers what they can and cannot do while covering politically sensitive issues." ECF No. 1-1 ¶ 86. In addition, Donnelly states "Gannett exercises

editorial control over its affiliates to an extent unseen in other chain newspapers." *Id.* ¶ 85. Donnelly offers a press release "showing the tie between Gannett and the *Register* specific to the poll." *Id.* ¶ 71. Donnelly also asserts the Des Moines Register's code of ethics is promulgated by Gannett. *Id.* ¶¶ 88–92. Donnelly states "Gannett may be held liable for its influence over its local papers' newsroom decisions." *Id.* ¶ 93. The original petition seeks to hold Gannett responsible for its actions in connection with the release of the poll. Gannett is therefore a primary defendant for purposes of § 1332(d)(3) and (d)(4)(B).

Because not all primary defendants are citizens of Iowa, the Court may not invoke the home-state exception or the interest-of-justice exception. None of the exceptions in the Class Action Fairness Act apply to this removal. Therefore, Donnelley's motion to remand is denied.

### C.    Jurisdictional Discovery

Donnelly requests jurisdictional discovery to obtain the Des Moines Register's list of subscribers. ECF No. 21-1 at 7. Through this discovery Donnelly expects to show more than two-thirds of these subscribers are citizens of Iowa. *Id.* However, conducting jurisdictional discovery would be futile. Here, the facts necessary to resolve the jurisdictional inquiry are known. *Cf. Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011) (affirming the district court's denial of jurisdictional discovery because "facts necessary to resolving the jurisdictional inquiry [were not] . . . unknown or disputed").

The dispositive question for the applicability of the local-controversy exception is whether there were subscribers in other states who incurred the alleged financial injury. It is undisputed that the Des Moines Register has subscribers across the country. Therefore, Donnelly would not be able to satisfy the principal injury prong no matter what jurisdictional discovery yielded.

The dispositive question for the applicability of the home-state exception and the interest-of-justice exception is whether Gannet is a primary defendant. The allegations contained in the original petition are sufficient to establish Donnelly seeks to hold Gannett liable for its

own actions in connection with the poll. Because Gannett is not an Iowa citizen, these exceptions cannot apply. Therefore, jurisdictional discovery would not alter this result either.

Accordingly, the Court declines to permit jurisdictional discovery.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff Dennis Donnelly's Motion to Remand, ECF No. 21, is **DENIED.**

**IT IS SO ORDERED.**

Dated this 22nd day of October, 2025.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE